TAYLOR *v.* STATE USE SEVIER COUNTY.

4-2784

Opinion delivered December 5, 1932.

*Sam Rorex* and *Nat R. Hughes,* for appellant.

*J. M. Jackson, E. K. Edwards, Abe Collins, Lake, Lake & Carlton* and *B. E. Isbell,* for appellee.

HUMPHREYS, J. Appellee intervened in the proceeding to liquidate the assets of the American Exchange Trust Company of Little Rock pending in the chancery court of Pulaski County to obtain judgment for $34,506.40 against the Bank Commissioner and liquidating agent, in their official capacities, for an alleged trust fund derived from the sale of bonds of Sevier County issued for the purpose of building a courthouse, and to have the amount allowed as a preferred claim.

Appellant filed a response, denying the alleged indebtedness and the right of appellee to have any amount allowed as a general or preferred claim.

The cause was submitted upon the pleadings and testimony, which resulted in a finding and decree against appellants in their respective capacities as State Bank Commissioner and liquidating agent of the American Exchange Trust Company for the total sum of $33,649.67 as a preferred claim to be paid out of any funds in their hands for the payment of preferred claims, and that bonds substituted for Sevier County bonds and delivered to appellees should be returned to appellants, from which findings and decree, adverse to the respective parties, each appealed.

The following facts are reflected by the record:

Bonds legally voted and issued in the sum of $110,-000, to obtain money with which to build a new courthouse in Sevier County, were sold on June 2, 1930, to M. W. Elkins & Company, of Little Rock, Arkansas, which sale was confirmed and approved by the county court of Sevier County. The county judge addressed a·

letter to the American Exchange Trust Company in the following words and figures:

"De Queen, Arkansas.

"June 14, 1930.

"Mr. J. B. Webster, Trust Officer, American Exchange Trust Company, Little Rock, Arkansas.

"Dear Sir:

"We are shipping to you $110,000 Sevier County, Arkansas, 5 per cent. courthouse and jail bonds to be delivered to M. W. Elkins & Company at par flat, as the full purchase price of the issue is $110,000 flat. The bonds are to be delivered to M. W. Elkins & Company as follows:

"When they receive the approving opinion of B. H. Charles, St. Louis, they agree to take up $3,000 of the bonds and balance on architect's monthly estimates for work done. You are further authorized and instructed to deliver, all or any part, any maturities, of the bonds to M. W. Elkins & Company at the above price from time to time, as they may request. You are to allow M. W. Elkins & Company to substitute this account with bonds of the county or other municipal bonds of equal par value.

"When you have received the first cash payment, please deposit same in your bank. The balance of the funds are to be drawn out on architect's estimates for work done by drafts on M. W. Elkins & Company, care of your bank, signed by the county judge, with a copy of the architect's estimate attached, once each month, beginning thirty days from the date the work starts.

"Yours very truly,

"J. C. Arnold,

"County Judge of Sevier County, Arkansas."

This letter of instructions was enclosed in a letter from the attorney employed by Sevier County to the American Exchange Trust Company and mailed to it on June 16, 1930. The letter of the attorney is as follows:

"American Exchange Trust Company,
"Little Rock, Arkansas.
"Dear Sir:
"Attention, Mr. J. B. Webster, Trust Officer.

"I am shipping you under separate cover, by prepaid express, $110,000 of Sevier County, Arkansas, 5 per cent. courthouse and jail bonds, and I am handing you herewith a letter of instructions, signed by the county judge, a nonlitigation certificate and a treasurer's receipt. You will note in the letter of instructions that you are requested to deposit the cash payment of $3,000 in your bank. Please advise me promptly as soon as this money is deposited.

"Very truly yours,

"Abe Collins."

Elkins & Company sold the Sevier County bonds from time to time and deposited the cash received from them in the trust department of the American Exchange Trust Company, under an agreement with it that the money might be withdrawn by substituting other bonds for the amounts drawn out. Some of the money was paid out on the county judge's drafts drawn on Elkins & Company with architect's estimates attached. The result was that, when the American Exchange Trust Company closed its doors, practically all the money derived from the sale of the Sevier County bonds which had not been expended for the construction of the courthouse and to pay the fiscal agent's fee to Elkins & Company had been converted by Elkins & Company into bonds of little value, some of which were entirely worthless. Later, the Bank Commissioner and liquidating agent of the American Exchange Trust Company refused to act further in collecting the bonds which had been substituted for the money derived from the sale of the Sevier County bonds, and, by agreement, said substituted bonds were transferred to a depository bank in Sevier County, where a portion of them were sold. The original Sevier County bonds were sold to Elkins & Company, supposedly at par, but a fiscal agent's fee was allowed to a man by the name of Toland,

and was paid to Elkins & Company out of the funds derived from the sale of the bonds, so that in fact they were sold to and purchased by Elkins & Company below par. On the day the defunct bank closed its doors, there was enough cash on hand to pay all preferred claims, and also to pay the balance due Sevier County, if classed as a preferred claim.

The trial court found that the letter of instructions only authorized the substitution of other bonds for Sevier County bonds by Elkins & Company, and did not authorize Elkins & Company to substitute other bonds for money derived from the sale of the Sevier County bonds, and we agree with the court's interpretation of the letter of instructions. The only object in selling the Sevier County bonds was to obtain money with which to build a courthouse. Such purpose was accomplished when the Sevier County bonds were converted into money. It would have been beside and beyond the object and purpose to be attained if the letter of instructions meant that Elkins & Company might purchase other bonds with the money derived from the sale of the Sevier County bonds. Such interpretation would have permitted Elkins & Company to use Sevier County money derived from the sale of its bonds to speculate in the bond market. The only authority in the law for handling the proceeds from the sale of the Sevier County bonds was to pay the public fund thus derived to the treasurer of Sevier County for the purpose of placing it in the county depository, all in accordance with the provisions of act 163 of the Acts of 1927 and act 139 of the Acts of 1931.

We also agree with the chancellor that appellants were entitled to an accounting for the amount of the fiscal agent's fee paid indirectly to Elkins & Company out of the funds derived from the sale of the bonds of Sevier County. The constitutional amendment under which the bonds were issued and sold inhibited a sale of them below par, and to deduct and pay a fiscal agent's fee indirectly would permit a sale of them below par.

We also agree with the chancellor that the amount of the public fund derived from the sale of the Sevier County bonds was and is a trust fund. The trust department of the American Exchange Trust Company accepted the bonds for collection and thereby agreed in writing to pay over the fund collected to the county judge of Sevier County on his drafts, in such amounts as were needed, monthly, to pay for the construction work on the courthouse as it progressed, according to architect's estimates attached to drafts. No authority was given in the letter of instructions to deposit more than the $3,000 first collected to the credit of Sevier County, which amount was drawn out long before the doors of the American Exchange Trust Company were closed. According to the authority in the letter of instructions, the balance of the fund was to be held to pay drafts drawn on Elkins & Company with architect's estimates attached. This fund therefore was necessarily a trust fund in the hands of a trustee for a particular purpose, evidenced by writing, and was not to be mingled with the general funds of the American Exchange Trust Company. Under subdivision 5 of § 1, act 107 of the Acts of 1927, the fund became an express trust to which appellees were entitled to the exclusion of general creditors.

We also agree with the chancellor that the transfer of the substituted bonds by agreement to the depository in Sevier County and a sale of a part of them did not estop the county from claiming the balance of the trust fund rightly belonging to it. The fund was a public trust fund, and there was no authority in the law for the county judge or any other public official to waive the county's right to it.

It follows, as a matter of course, that the county has no right or title to the substituted bonds. The chancellor correctly ordered that they be returned to appellants.

The decree is affirmed on both the appeal and cross-appeal.

SMITH and McHANEY, JJ., dissent.